# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF FLORIDA

# ORLANDO DIVISION

| | | |
|---|---|---|
| JACOB BARRY ALLSTON, | ) | |
| PLAINTIFF, | ) | |
| | ) | CIVIL ACTION NO. _____ |
| v. | ) | |
| | ) | TRIAL BY JURY DEMANDED |
| FLORIDA DEPARTMENT | ) | |
| OF REVENUE, 18TH | ) | |
| JUDICIAL DISTRICT | ) | |
| CIRCUIT COURT | ) | |
| TITUSVILLE BREVARD | ) | |
| COUNTY, FLORIDA | ) | |
| DEPARTMENT OF | ) | |
| HIGHWAY SAFETY AND | ) | |
| MOTOR VEHICLES, | ) | |
| DEFENDANTS. | ) | |
| | ) | |

JUN 12 2024 AM 10:11
FILED - USDC - FLMD - ORL

# COMPLAINT

COMES NOW, Plaintiff Jacob Barry Allston, pro se, and files this Complaint against the Defendants, Florida Department of Revenue, 18th Judicial Circuit Court, Titusville, Brevard County, Florida Department of Highway Safety and Motor Vehicles and respectfully shows this Court the following:

# INTRODUCTION

1.     This is a civil action seeking damages and injunctive relief against the Defendant for acts committed under color of state law, which deprived Plaintiff of rights secured under the Fourteenth Amendment to the United States Constitution and other applicable laws. Plaintiff seeks a default judgment for failure of the Defendant(s) to respond to the Plaintiff's claims regarding the unlawful collection actions undertaken by the Defendant(s).

## JURISDICTION AND VENUE

2.   This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1331, as this action arises under the Constitution and laws of the United

States.

3.   Venue is proper in this Court under 28 U.S.C. § 1391(b) because the events

or omissions giving rise to the Plaintiff's claims occurred in this district.

## THE PARTIES

4.   Plaintiff Jacob Barry Allston is a sovereign state citizen of the United States

of America and a resident of the Florida Republic.

5.   Defendant Florida Department of Revenue is a governmental entity

organized under the laws of the State of Florida and is subject to the jurisdiction

of this Court. Defendant may be served with process at its main office located at

5050 West Tennessee Street, Tallahassee, FL 32399.

6.    Defendant 18th Judicial Circuit Court, Titusville, Brevard County is a governmental entity organized under the laws of the State of Florida and is subject to the jurisdiction of this Court. Defendant may be served with process at its main office located at North Brevard Government Center, 400 South Street, Titusville, FL 32780.

7.    Defendant Florida Department of Highway Safety and Motor Vehicles is a governmental entity organized under the laws of the State of Florida and is subject to the jurisdiction of this Court. Defendant may be served with process at its main office located at 2900 Apalachee Parkway, Tallahassee, FL 32399.

## FACTUAL ALLEGATIONS

8.    On February 7, 2024, Plaintiff was subjected to a bank funds seizure by Defendant Florida Department of Revenue (DOR), purportedly to satisfy child support obligations, without enrollment by Plaintiff.

9.    The Defendant DOR's actions have resulted in the Plaintiff being deprived of income, suffering financial, emotional and reputational damages.

10.    Plaintiff has submitted multiple objections and requests for review to the DOR and 18th Judicial Circuit Court, Titusville, Brevard County, none of which have been adequately addressed or resolved.

11.    The Defendants DOR's and 18th Judicial Circuit Court, Titusville, Brevard County's failure to respond to Plaintiff's objections and legal arguments have resulted in the Plaintiff incurring significant costs in conducting legal research and responding to the actions of the Defendants.

12.    On February 12, 2024, the Plaintiff made presentment of a NOTICE OF COUNTEROFFER, COUNTER DEMAND OF DEBT SETTLEMENT, AFFIDAVIT FOR COUNTEROFFER, DEMAND AND SETTLEMENT, SURETY BOND and DOR presentment with UCC CONTRACT TRUST ENDORSEMENT to the Florida Department of Revenue (DOR), for the setoff, settlement, and closure of Account No. 2001983088, via USPS Certified Mail No. 70223330000115075702.

13.    On February 12, 2024, Plaintiff made presentment of each of the above to the 18th Judicial Circuit Court, Titusville, Brevard County, with a Counterclaim. The presentment was added to the docket for Case Number 05-2023-DR-054434-XXXX-XX sent via USPS Certified Mail.

14.    The Presentment was delivered to the DOR on February 15, 2024.

15.    On February 26, 2024, the Plaintiff made presentment of a NOTICE AND DEMAND, AFFIDAVIT OF CLAIM, and a FEE SCHEDULE to the Florida Department of Revenue, via USPS Certified Mail No. 9589071052701280682556.

16.    On February 26, 2024, Plaintiff made presentment of each of the above to the 18th Judicial Circuit Court, Titusville, Brevard County, with a Counterclaim. The presentment was added to the docket for Case Number 05-2023-DR-054434-XXXX-XX sent via USPS Certified Mail.

17.    The Presentment was delivered to the DOR on February 29, 2024.

18.    On March 11, 2024, the Plaintiff made presentment of a NOTICE OF FAULT IN DISHONOR OPPORTUNITY TO CURE to the Florida Department of Revenue, via USPS Certified Mail No. 9589071052701117791970.

19.    On March 11, 2024, Plaintiff made presentment of each of the above to the 18th Judicial Circuit Court, Titusville, Brevard County, with a Counterclaim. The presentment was added to the docket for Case Number 05-2023-DR-054434-XXXX-XX sent via USPS Certified Mail.

20.    The Presentment was delivered to the DOR on March 15, 2024.

21.    On March 15, 2024, the Plaintiff received NOTICE OF INTENT TO REPORT TO COMSUMER REPORTING AGENCIES from the Florida Department of Revenue dated March 12, 2024.

22.    On March 15, 2024, the Plaintiff received NOTICE OF ORDER OF SUSPENSION AND FINAL ORDER from the Florida Department of Highway Safety and Motor Vehicles, acting in accordance with The Florida Department of Revenue dated March 13, 2024.

23.    On March 18, 2024, the Plaintiff made presentment of NOTICE AND DEMAND TO VALIDATE DEBT CLAIM to the Florida Highway Safety and Motor Vehicles, via USPS Certified Mail No. 70081830000254230285

24.    On March 27, 2024, the Plaintiff made presentment of an AFFIDAVIT OF NOTICE OF DEFAULT to the Florida Department of Revenue, via USPS Certified Mail No. 70081830000254230872.

25.    On March 27, 2024, Plaintiff made presentment of the above to the 18th Judicial Circuit Court, Titusville, Brevard County, with a Counterclaim. The presentment was added to the docket for Case Number 05-2023-DR-054434-XXXX-XX sent via USPS Certified Mail.

26.    The Presentment was delivered to the DOR on April 5, 2024.

27.    On April 10, 2024, Plaintiff made presentment of a CERTIFICATE OF NON-RESPONSE sent via USPS Certified Mail No. 70081830000254230858.

28.    On April 10, 2024, Plaintiff made presentment of the above to the 18th Judicial Circuit Court, Titusville, Brevard County, with a Counterclaim. The presentment was added to the docket for Case Number 05-2023-DR-054434-XXXX-XX sent via USPS Certified Mail.

29.    The Presentment was delivered to the DOR on April 19, 2024.

30.    On April 19, 2024, the Florida Department of Revenue accepted the terms and provisions of the Presentment, as evidenced by the CERTIFICATE OF

NON-RESPONSE dated April 10, 2024, sent via USPS Certified Mail No.

70081830000254230858.

31.    On April 25, 2024, the Plaintiff received NOTICE OF PAST-DUE

AMOUNT from The Florida Department of Revenue dated April 18, 2024.

32.    On April 26, 2024, Plaintiff made presentment of a NOTICE OF

DEFAULT IN DISHONOR AND CONSENT TO JUDGMENT and REQUEST

REGARDING A STATEMENT OF ACCOUNT sent via USPS Certified Mail

No. 9589071052701117805417, detailing the events leading to the default.

33.    On April 26, 2024, Plaintiff made presentment of each of the above to the

18th Judicial Circuit Court, Titusville, Brevard County, with a Counterclaim.

The presentment was added to the docket for Case Number 05-2023-DR-

054434-XXXX-XX sent via USPS Certified Mail.

34.    The Presentment was delivered to the DOR on May 3, 2024.

35.    DOR's failure to sufficiently respond or timely honor the Presentment, by

the terms of the Presentment, constitutes DOR's acceptance and approval of the

REQUEST REGARDING A STATEMENT OF ACCOUNT.

36.    As of June 7, 2024, Plaintiff had not received a sufficient response to the

Presentment, thereby placing the DOR at fault, as evidenced by the

CERTIFICATE OF NON-RESPONSE dated April 10, 2024.

37.    DOR's failure to perform by the terms of the Presentment constitutes DOR's acceptance and approval of the granting and conveying of a Specific Power of Attorney to the Plaintiff to perform the duties of DOR stipulated therein.

38.    DOR's failure to perform by the terms of the Fault Notice constitutes DOR's acceptance and approval of the granting and conveying of a Specific Power of Attorney to the Plaintiff to perform the duties of DOR stipulated therein.

39.    DOR's failure to sufficiently respond or timely honor the Fault Notice, by the terms of the Fault Notice, constitutes DOR's acceptance and approval of the REQUEST REGARDING A STATEMENT OF ACCOUNT incorporated with the Presentment.

40.    DOR's acceptance and approval of the REQUEST REGARDING A STATEMENT OF ACCOUNT constitutes DOR's agreement to the stipulated aggregate amount of unpaid obligations being Zero ($0.00) and 00/100 dollars.

41.    As an operation of law, DOR, by dishonor of the Presentment and the Fault Notice, has created a default.

42.    On May 14, 2024, the Plaintiff received SECOND NOTICE OF NONPAYMENT from The Florida Department of Revenue dated May 7, 2024.

## CAUSES OF ACTION

## Count One: Violation of 42 U.S.C. § 652 (Child Support Enforcement Compliance)

43.    Plaintiff incorporates each of the above factual allegations as if fully restated here.

44.    The enforcement of child support under the Title IV-D program must comply with federal laws, particularly 42 U.S.C. § 652, which governs child support enforcement procedures.

45.    Defendant Florida Department of Revenue's (DOR's) actions in enforcing child support obligations without adhering to these federal statutes are unlawful.

46.    The Defendant DOR has engaged in enforcement actions such as bank funds seizure and threats of wage garnishment and license suspension without providing proper notice or an opportunity for the Plaintiff to be heard, thus violating due process rights.

47.    The Defendant DOR has enforced child support agreements without obtaining proper judicial review or approval, failing to ensure that the Plaintiff's rights are protected and that enforcement actions are fair and justified.

48.    The Defendant DOR has engaged in inconsistent and arbitrary enforcement practices, resulting in disproportionate penalties and enforcement actions that do not consider the Plaintiff's financial circumstances and ability to pay.

49. The Defendant DOR has utilized extensive databases to track and enforce child support orders, raising significant privacy concerns. There has been unauthorized access or misuse of the Plaintiff's personal information, infringing upon Plaintiff's privacy rights.

50. The Defendant DOR has failed to accurately account for and disburse collected child support funds, leading to financial harm. Discrepancies in financial reporting highlight concerns about transparency and accountability in the administration of the program.

51. The inconsistent and unpredictable nature of the Defendant's enforcement actions has caused Plaintiff substantial emotional suffering, anxiety, and stress.

52. Plaintiff has been subjected to financial difficulties due to the Defendant's mishandling and unauthorized use of personal data.

53. The Defendant's failure to adhere to federal statutes governing child support enforcement has resulted in significant harm to the Plaintiff, warranting legal action to seek redress and ensure compliance with the law.

54. As a result of Defendant's non-compliance with 42 U.S.C. § 652, Plaintiff has suffered financial and emotional damages.

## Count Two: Violation of 42 U.S.C. § 1983 (Civil Action for Deprivation of Rights)

55.    Plaintiff incorporates each of the above factual allegations as if fully restated here.

56.    Defendant Florida Department of Revenue, acting under color of state law, deprived Plaintiff of rights secured by the Constitution and laws of the United States, including the Fourteenth Amendment.

57.    The public and unauthorized actions taken by Defendant DOR, including privacy violations and unwarranted enforcement measures, have damaged the Plaintiff's reputation within the community and professional circles.

58.    The Defendant's actions have not only violated federal statutes but also fundamental constitutional protections, warranting relief under 42 U.S.C. § 1983 to address the deprivation of the Plaintiff's rights.

59.    Defendant's actions have resulted in Plaintiff suffering financial, emotional, and reputational damages.

60.    As a direct result of the Defendant's unlawful actions, the Plaintiff seeks compensatory and punitive damages and any other relief the Court deems appropriate to redress the deprivation of rights and to ensure future compliance with constitutional and federal law.

61.    The Plaintiff requests the Court to issue a declaratory judgment affirming that the Defendant's actions violated the Plaintiff's constitutional rights and to

issue an injunction preventing the Defendant from engaging in such conduct in the future.

## Count Three: Violation of UCC 3-603 (Obligation to Negotiate Instruments)

62.    Plaintiff incorporates each of the above factual allegations as if fully restated here.

63.    Defendant Florida Department of Revenue failed to comply with the obligation to negotiate instruments as required by UCC 3-603.

64.    The Defendant DOR did not properly negotiate or handle the instruments related to the Plaintiff's child support payments. This includes failing to follow the required procedures for accepting, processing, and crediting payments made by or on behalf of the Plaintiff.

65.    Defendant DOR's failure to adhere to UCC 3-603 resulted in improper handling of the financial instruments, causing misallocation or misapplication of the Plaintiff's payments. This improper handling violates the standards set forth in the Uniform Commercial Code for the negotiation and management of financial instruments.

66.    Defendant's actions constituted securities fraud by not adhering to the proper procedures within the specified timeframe. The mishandling of payments

and failure to negotiate the instruments correctly led to false and misleading representations about the status and application of the Plaintiff's payments.

67. Defendant's conduct in failing to properly negotiate and manage the instruments related to child support payments has caused significant financial harm to the Plaintiff. This includes incorrect reporting of payment status, unwarranted enforcement actions based on alleged non-payment, and financial penalties.

68. The Plaintiff has incurred additional costs and fees as a result of the Defendant's failure to comply with UCC 3-603, including but not limited to legal fees, administrative fees, and other related expenses arising from the need to correct and dispute the improper handling of payments.

69. As a direct and proximate result of Defendant's actions, the Plaintiff has suffered financial damages, including but not limited to loss of funds, increased debt, and damage to credit standing.

70. As a result, Defendant Florida Department of Revenue committed securities fraud by not adhering to the proper procedures within the specified timeframe.

71. The Plaintiff seeks compensatory damages for the financial losses incurred due to the Defendant's improper handling and failure to negotiate the instruments as required by UCC 3-603.

72.    The Plaintiff requests the Court to issue a declaratory judgment affirming that the Defendant's actions violated UCC 3-603 and to order the Defendant DOR to comply with all obligations related to the proper negotiation and management of financial instruments.

73.    The Plaintiff further seeks any additional relief the Court deems appropriate to redress the financial damages and to ensure future compliance with the standards set forth in UCC 3-603.

## Count Four: Violation of 31 U.S.C. § 3123 (Government Misrepresentation of Payment Obligations)

74.    Plaintiff incorporates each of the above factual allegations as if fully restated here.

75.    The Defendant Florida Department of Revenue misrepresented payment obligations, suggesting that individual citizens are responsible for bills that should be considered government obligations under 31 U.S.C. § 3123.

76.    31 U.S.C. § 3123 states that obligations issued by the government shall be paid by the Treasury. The statute ensures that payment of government obligations is a federal responsibility, not an individual citizen's burden.

77.    Defendant DOR's actions included incorrectly attributing the responsibility of certain financial obligations to the Plaintiff, which should have

been recognized and managed as government obligations. This misrepresentation led to the improper collection efforts directed at the Plaintiff.

78.    The Defendant's misrepresentation of payment obligations resulted in undue financial pressure on the Plaintiff, including but not limited to wage garnishment, tax refund interceptions, and other enforcement actions based on the incorrect classification of the debt.

79.    By misrepresenting the nature of these obligations, Defendant Florida Department of Revenue violated federal law, specifically 31 U.S.C. § 3123, which protects individuals from being wrongfully held liable for obligations that are legally the responsibility of the government.

80.    Defendant DOR's actions directly caused the Plaintiff to incur financial damages. These damages include wrongful collection of funds, additional interest and penalties, legal fees, and other costs associated with disputing and addressing the misrepresented obligations.

81.    As a direct and proximate result of Defendant's misrepresentation of payment obligations, the Plaintiff has experienced significant financial harm, including but not limited to loss of income, increased financial stress, and damage to creditworthiness.

82.    Plaintiff seeks compensatory damages for the financial losses incurred due to the Defendant's misrepresentation of payment obligations, as well as any associated legal and administrative costs.

83.    The Plaintiff requests the Court to issue a declaratory judgment affirming that the Defendant's actions violated 31 U.S.C. § 3123 and to order the Defendant to cease misrepresenting government obligations as individual liabilities.

84.    The Plaintiff further seeks injunctive relief to prevent Defendant DOR from continuing such misrepresentations in the future and to ensure proper classification and management of obligations as mandated by federal law.

85.    The Plaintiff also requests any additional relief the Court deems appropriate to redress the financial damages and to ensure compliance with 31 U.S.C. § 3123 in all future dealings.

## Count Five: Violation of 18 U.S.C. § 1028A (Identity Theft in Child Support Enrollment)

86.    Plaintiff incorporates each of the above factual allegations as if fully restated here.

87.    The unauthorized enrollment of Plaintiff in the child support program constitutes identity theft under 18 U.S.C. § 1028A.

88.    18 U.S.C. § 1028A criminalizes the knowing and unlawful use of another person's identification to commit, aid, or abet any unlawful activity, including the improper enrollment in government programs.

89.    Defendant DOR's actions involved the unauthorized use of Plaintiff's personal identification information, including but not limited to Social Security number, date of birth, and other identifying details, to enroll Plaintiff in the child support program.

90.    The unauthorized enrollment was done without Plaintiff's knowledge or consent, and no valid legal process justified this action, thereby constituting a clear case of identity theft as defined under federal law.

91.    As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered financial damages. These damages include but are not limited to wrongful bank fund seizure and other financial losses resulting from the improper enrollment.

92.    Plaintiff has also endured significant emotional distress due to the identity theft. The unauthorized use of Plaintiff's personal information has led to anxiety, stress, and the burden of rectifying the false enrollment and its consequences.

93.    Defendant DOR's actions have further resulted in reputational harm to Plaintiff. The false enrollment in the child support program has led to unjustified legal and financial assumptions about Plaintiff's responsibilities and obligations.

94.    Plaintiff seeks compensatory damages for the financial losses incurred due to the identity theft, including restitution of wrongfully seizing funds, as well as damages for emotional distress.

95.    Plaintiff requests the Court to issue a declaratory judgment affirming that Defendant's actions violated 18 U.S.C. § 1028A and to order the Defendant to cease unauthorized use of personal identification information.

96.    Plaintiff further seeks injunctive relief to prevent Defendant from engaging in similar identity theft actions in the future, ensuring proper consent and legal justification for any enrollment in government programs.

97.    Plaintiff also requests any additional relief the Court deems appropriate to redress the financial and emotional damages caused by Defendant's identity theft and to secure Plaintiff's personal information against further unauthorized use.

## Count Six: Violation of 42 U.S.C. § 1983 (Due Process in Driver's License Suspension Threats)

98.    Plaintiff incorporates each of the above factual allegations as if fully restated here.

99.    Threats of automatic suspension of Plaintiff's driver's license by the Florida Highway Safety and Motor Vehicles, acting in accordance with Florida

Department of Revenue, without proper due process, violate the Fourteenth Amendment.

100.  The Fourteenth Amendment guarantees that no state shall deprive any person of life, liberty, or property without due process of law. This includes the right to notice and a fair hearing before being deprived of a significant property interest, such as a driver's license.

101.  The case of Kavadas v. Department of Motor Vehicles (Docket No. MER-L-1044-15) serves as a pertinent legal precedent. In this 2019 New Jersey case, the court ruled that the automatic suspension of driver's licenses due to nonpayment of child support violates due process and fundamental fairness. This case underscores the necessity of procedural safeguards to protect individuals' rights in the context of license suspensions related to child support enforcement.

102.  As a direct and proximate result of Defendant's due process violations, Plaintiff has suffered financial damages, including but not limited to potential loss of employment opportunities, increased transportation costs, and other economic hardships arising from the threat of license suspension.

103.  Plaintiff has also experienced significant emotional distress due to the threat of license suspension. The fear of losing the ability to drive, which is essential for daily life and livelihood, has caused anxiety, stress, and mental anguish.

104.   Plaintiff seeks compensatory damages for the financial losses incurred due to Defendant's actions, including any economic hardships resulting from the threatened suspension of Plaintiff's driver's license.

105.   Plaintiff requests the Court to issue a declaratory judgment affirming that Defendant's actions violated 42 U.S.C. § 1983 by depriving Plaintiff of due process rights under the Fourteenth Amendment.

106.   Plaintiff further seeks injunctive relief to prevent Defendant from engaging in similar due process violations in the future, ensuring that any suspension of driver's licenses related to child support enforcement is preceded by proper notice and a fair hearing.

107.   Plaintiff also requests any additional relief the Court deems appropriate to redress the financial and emotional damages caused by Defendant's due process violations and to safeguard Plaintiff's rights against future threats of automatic license suspension without due process.

## Count Seven: Violation of 42 U.S.C. § 1985 (Conspiracy to Interfere with Civil Rights)

108.   Plaintiff incorporates each of the above factual allegations as if fully restated here.

109.   Defendant Florida Department of Revenue conspired to deprive Plaintiff of equal protection of the laws and equal privileges and immunities under the laws, in violation of 42 U.S.C. § 1985.

110.   Defendant conspired with other state agencies and officials to enforce child support obligations and penalties in a manner that discriminated against Plaintiff and denied Plaintiff equal treatment under the law.

111.   Defendant coordinated efforts to enforce child support payments without providing proper notice, hearings, or the opportunity to contest the enforcement actions, thereby depriving Plaintiff of due process rights.

112.   Defendant misrepresented the nature and extent of Plaintiff's payment obligations, suggesting that individual citizens are responsible for bills that should be considered government obligations, thereby misleading Plaintiff and causing financial harm.

113.   Defendant threatened the automatic suspension of Plaintiff's driver's license without adequate procedural protections, thereby creating significant financial and emotional distress.

114.   The actions of Defendant Florida Department of Revenue and its co-conspirators were done with the intent to discriminate against Plaintiff and to deny Plaintiff the equal protection of the laws guaranteed by the Fourteenth Amendment.

115.   As a result of this conspiracy and the resulting deprivation of Plaintiff's civil rights, Plaintiff has suffered substantial financial damages, including but not limited to unlawful enforcement actions leading loss of income, increased transportation costs and potential loss of employment opportunities due to the threat of driver's license suspension and legal fees incurred in attempting to defend against unlawful enforcement actions and to protect Plaintiff's rights.

116.   Plaintiff has also suffered significant emotional damages, including anxiety, stress, and mental anguish caused by the continuous threat of unfair enforcement actions and the deprivation of fundamental rights.

117.   Plaintiff seeks compensatory damages for the financial and emotional harms caused by Defendant's actions, including any economic losses and mental suffering resulting from the conspiracy to interfere with Plaintiff's civil rights.

118.   Plaintiff requests the Court to issue a declaratory judgment affirming that Defendant's actions violated 42 U.S.C. § 1985 by conspiring to deprive Plaintiff of equal protection of the laws and equal privileges and immunities under the laws.

119.   Plaintiff further seeks injunctive relief to prevent Defendant DOR from engaging in similar conspiracies and civil rights violations in the future, ensuring that Plaintiff and others are protected from discriminatory and unlawful enforcement practices.

120.   Plaintiff also requests any additional relief the Court deems appropriate to redress the financial and emotional damages caused by Defendant's conspiracy and to safeguard Plaintiff's civil rights against future interference.

## Count Eight: Violation of 42 U.S.C. § 1986 (Neglect to Prevent Conspiracy)

121.   Plaintiff incorporates each of the above factual allegations as if fully restated here.

122.   Defendant Florida Department of Revenue had knowledge of the wrongs conspired to be done, as referenced in Count Seven, and had the power to prevent or aid in preventing the commission of the same but neglected or refused so to do, in violation of 42 U.S.C. § 1986.

123.   Despite possessing the power and duty to intervene and prevent the deprivation of Plaintiff's civil rights through the discriminatory conspiracy detailed in Count Seven, Defendant DOR failed to take any reasonable steps to halt or mitigate the ongoing violations.

124.   By neglecting to intervene and prevent the unlawful actions of its employees, agents, or co-conspirators, Defendant DOR allowed the discriminatory enforcement practices and violations of Plaintiff's constitutional rights to persist unabated.

125.   As a direct and proximate result of Defendant's inaction and failure to prevent the conspiracy described in Count Seven, Plaintiff has suffered significant financial and emotional damages.

126.   Plaintiff has incurred financial losses, including but not limited to Expenses related to defending against unlawful enforcement actions and attempting to rectify the resulting financial harm, economic hardships resulting from arbitrary enforcement practices and threats of punitive measures, such as wage garnishments and license suspensions and legal costs associated with seeking redress for the violations of Plaintiff's civil rights.

127.   Additionally, Plaintiff has endured emotional distress, anxiety, and mental anguish due to the ongoing threat of discriminatory enforcement actions and the feeling of helplessness resulting from Defendant's neglect to prevent the conspiracy.

128.   Plaintiff seeks compensatory damages for the financial losses and emotional distress caused by Defendant's failure to prevent the conspiracy, as well as any other appropriate relief deemed necessary by the Court to address the harm suffered by Plaintiff.

129.   Plaintiff also requests that the Court issue injunctive relief requiring Defendant to implement policies and procedures aimed at preventing future

violations of 42 U.S.C. § 1985 and § 1986, thereby ensuring the protection of Plaintiff's civil rights and the rights of others similarly situated.

130.   In light of Defendant's neglect to prevent the conspiracy and the resulting harm suffered by Plaintiff, Plaintiff further requests that the Court impose any additional remedies or sanctions it deems necessary to deter future violations and promote compliance with federal civil rights laws.

## Count Nine: Violation of the Fourth Amendment (Unauthorized Seizure of Funds)

131.   Plaintiff incorporates each of the above factual allegations as if fully restated here.

132.   The Florida Department of Revenue seized funds from Plaintiff's bank account without proper legal authorization or due process, violating Plaintiff's Fourth Amendment rights.

133.   The Fourth Amendment protects individuals against unreasonable searches and seizures, requiring that such actions be conducted pursuant to a valid warrant supported by probable cause or under specific exceptions recognized by law.

134.   In this case, Defendant DOR's seizure of funds from Plaintiff's bank account was conducted without the requisite legal authorization, warrant, or valid exception to the Fourth Amendment's requirements.

135.   By unlawfully depriving Plaintiff of their property through the unauthorized seizure of funds, Defendant violated Plaintiff's constitutional rights and subjected them to financial harm and distress.

136.   As a direct and proximate result of Defendant's actions, Plaintiff has incurred financial losses and emotional distress, including but not limited to the loss of funds wrongfully seized from Plaintiff's bank account, which was necessary for essential living expenses or other financial obligations and emotional distress and anxiety resulting from the sudden and unauthorized deprivation of Plaintiff's property without adequate legal recourse or due process protections.

137.   Plaintiff seeks redress for the financial losses suffered due to Defendant's unlawful seizure of funds, as well as compensation for the emotional distress and inconvenience caused by the violation of their Fourth Amendment rights.

138.   Additionally, Plaintiff requests that the Court issue injunctive relief to prevent future unauthorized seizures of funds by Defendant and to ensure compliance with constitutional standards regarding searches and seizures under the Fourth Amendment.

139.   Considering Defendant's infringement upon Plaintiff's constitutional rights and the consequent harm endured, Plaintiff additionally pursues any other suitable relief deemed fair and equitable by the Court to adequately address the complete extent of the damages suffered.

## Count Ten: Violation of Fourteenth Amendment (Due Process and Fundamental Fairness)

140.   Plaintiff incorporates each of the above factual allegations as if fully restated here.

141.   Defendant DOR's conduct, in alignment with directives from Defendant Florida Highway Safety and Motor Vehicles, entails the transmission of mail threats regarding the suspension of Plaintiff's driver's license and the enforcement of child support obligations without affording due process protections.

142.   The Defendant's actions in acting in accordance with Florida Highway Safety and Motor Vehicles sending mail threats of driver's license suspension and enforcing child support without proper due process violate the Fourteenth Amendment.

143.   The Fourteenth Amendment of the United States Constitution guarantees that no state shall deprive any person of life, liberty, or property without due

process of law. This includes the right to notice and a fair hearing before being deprived of significant property interests, such as a driver's license.

144. Defendant's actions in sending mail threats regarding the suspension of Plaintiff's driver's license and enforcing child support obligations without providing adequate procedural safeguards, such as timely notice and a meaningful opportunity to contest the action, constitute a deprivation of due process.

145. As a direct and proximate consequence of Defendant's violations of due process and fundamental fairness under the Fourteenth Amendment, Plaintiff has suffered financial damages, including but not limited to potential loss of employment opportunities, increased transportation costs, and other economic hardships arising from the threat of license suspension.

146. Additionally, Plaintiff has experienced significant emotional distress due to the threat of license suspension. The fear of losing the ability to drive, which is essential for daily life and livelihood, has caused anxiety, stress, and mental anguish.

147. Plaintiff seeks compensatory damages for the financial losses incurred due to Defendant's actions, including any economic hardships resulting from the threatened suspension of Plaintiff's driver's license.

148.   Plaintiff requests the Court to issue a declaratory judgment affirming that Defendant's actions violated the Fourteenth Amendment by depriving Plaintiff of due process rights under the United States Constitution.

149.   Furthermore, Plaintiff seeks injunctive relief to prevent Defendant from engaging in similar violations of due process and fundamental fairness in the future, ensuring that any suspension of driver's licenses related to child support enforcement is preceded by proper notice and a fair hearing.

150.   Plaintiff also requests any additional relief the Court deems appropriate to redress the financial and emotional damages caused by Defendant's violations of due process and fundamental fairness under the Fourteenth Amendment and to safeguard Plaintiff's rights against future threats of automatic license suspension without due process.

## Count Eleven: Violation of 42 U.S.C. § 1983 (Enforceability of Orders by Hearing Officers)

151.   Plaintiff incorporates each of the above factual allegations as if fully restated here.

152.   Recommendations made by child support hearing officers must be reviewed and signed by a circuit court judge to become enforceable. Failure to do so violates Plaintiff's due process rights under the Fourteenth Amendment.

153.   This procedural safeguard ensures that decisions regarding child support obligations undergo judicial scrutiny before being enforced, thereby safeguarding the due process rights of all parties involved.

154.   As a consequence of the Defendant 18th Judicial District Circuit Court Titusville Brevard County's actions, Plaintiff has suffered significant financial and emotional damages. The failure to ensure the enforceability of child support orders through proper judicial review has resulted in adverse consequences for Plaintiff, including but not limited to financial burdens, emotional distress, and disruptions to familial relationships.

## Count Twelve: Violation of Federal Law Compliance (Title IV-D Program)

155.   Plaintiff incorporates each of the above factual allegations as if fully restated here.

156.   The Title IV-D program, established under federal law, is designed to ensure effective and uniform enforcement of child support obligations across states. Compliance with federal statutes is imperative to maintain the integrity and legality of the program.

157.   Violations of federal laws within the Title IV-D program can encompass various aspects, including procedural errors, misapplication of regulations, and failure to uphold the rights of obligors and recipients.

158. Plaintiff contends that Defendant Florida Department of Revenue's actions, allegedly breaching federal law within the Title IV-D program, have resulted in a cascade of adverse consequences. These include erroneous enforcement actions, unjust financial burdens on obligors, and the erosion of trust in the child support system.

159. Furthermore, Defendant's non-compliance with federal laws has created a ripple effect, extending beyond mere financial implications. Plaintiff has endured emotional distress, anxiety, and mental anguish as a direct consequence of Defendant's actions.

160. It is imperative to underscore that the Title IV-D program's compliance with federal laws is not merely a technical requirement but a fundamental safeguard for the rights and interests of all parties involved. Any deviation from these legal standards undermines the program's legitimacy and effectiveness.

161. Plaintiff seeks not only redress for the tangible financial losses suffered but also recognition of the emotional toll inflicted by Defendant's alleged violations. The damages incurred extend beyond mere monetary compensation, encompassing the broader impact on Plaintiff's well-being and sense of justice.

162. By pursuing legal action against Defendant, Plaintiff aims to not only rectify the immediate harm caused but also to compel adherence to federal laws

within the Title IV-D program, thereby safeguarding the rights and interests of all participants in the child support system.

163.    As a direct and proximate result of Defendant Florida Department of Revenue's actions, Plaintiff has suffered financial and emotional damages.

## Count Thirteen: Violation of Subpoena Power (Privacy and Due Process)

164.    Plaintiff incorporates each of the above factual allegations as if fully restated here.

165.    The executive director of the Department of Revenue or their designee's issuance of subpoenas for personal financial information must comply with legal standards to avoid infringing on individuals' privacy and due process rights.

166.    The misuse of subpoena power by Defendant DOR has resulted in tangible harm to Plaintiff, both financially and emotionally. Financial damages include the costs associated with responding to subpoenas, such as legal fees, administrative expenses, and disruptions to financial stability. Moreover, the unauthorized disclosure of personal financial information can lead to reputational harm, identity theft risks, and other adverse consequences.

167.    Beyond the quantifiable financial losses, Plaintiff has endured emotional distress and anxiety stemming from the invasion of privacy and perceived violations of due process. The indiscriminate use of subpoena power without

adequate safeguards erodes trust in the integrity of the legal system and exacerbates feelings of vulnerability and insecurity among affected individuals.

168.   As a direct and proximate result of Defendant's misuse of subpoena power, Plaintiff has suffered financial and emotional damages.

## Count Fourteen: Fraudulent Operation of Title IV-D Child Support Agencies

169.   Plaintiff incorporates each of the above factual allegations as if fully restated here.

170.   Title IV-D child support agencies operate outside federal territories, as defined by 42 U.S.C. §§ 651-669(b), which delineates the jurisdiction as the District of Columbia.

171.   These agencies lack the jurisdiction to enforce child support under federal law outside the defined federal territories.

172.   Defendant Florida Department of Revenue actions in enforcing child support obligations through these agencies constitutes fraudulent activity, as they are operating beyond their legal jurisdiction.

173.   As a direct and proximate result of Defendant's actions, Plaintiff has suffered financial and emotional damages due to the unauthorized and fraudulent enforcement of child support obligations.

174.   Plaintiff seeks relief for the harm caused by these fraudulent actions and requests that the court declare the actions of the Title IV-D child support agencies as unlawful and void due to their lack of jurisdiction.

## Count Fifteen: Role of the Department of Revenue

175.   Plaintiff incorporates each of the above factual allegations as if fully restated here.

176.   The Florida Department of Revenue (DOR) administers and enforces child support services under state and federal laws. While the DOR operates within the executive branch of the State government, it is not an independent agency. The DOR's actions in child support cases are conducted under the authority granted by state statutes and federal regulations, and it reports to the governor of Florida.

177.   Plaintiff asserts that the DOR, when acting to collect and enforce child support, operates under the authority of the State and reports to the governor, thereby not constituting a separate agency from the State government.

178.   The actions of the DOR in this capacity have led to Plaintiff suffering financial, emotional, and reputational damages due to the enforcement measures employed.

179.   Plaintiff seeks a declaration from the Court confirming that the DOR, when acting to collect and enforce child support, operates under the authority of the State and reports to the governor.

### Count Sixteen: Legal Representation Conflict

180.   Plaintiff incorporates each of the above factual allegations as if fully restated here.

181.   The Office of the Attorney General provides legal representation to the Department of Revenue in child support enforcement cases. However, this dual role presents a conflict of interest, as the Attorney General also has broader responsibilities to the state and its citizens. This potential conflict raises concerns about impartiality and the protection of individual rights in child support proceedings.

182.   Plaintiff asserts that the Office of the Attorney General, when acting as legal counsel for the Department of Revenue in child support cases, presents a conflict of interest by reporting to both the governor and the Department of Health and Human Services.

183.   As a result of this potential conflict of interest, Plaintiff has suffered financial, emotional, and reputational damages due to the lack of impartiality and fair representation in child support proceedings.

184.   Plaintiff seeks a declaration from the Court confirming that the dual role of the Attorney General presents a conflict of interest, raising concerns about the impartiality and protection of individual rights in child support proceedings.

## Count Seventeen: Voluntary Agreements

185.   Plaintiff incorporates each of the above factual allegations as if fully restated here.

186.   Under Florida statute 409.2564, the Department of Revenue (DOR) can enter into voluntary agreements with obligors for child support payments.

187.   It is asserted that enforcing voluntary agreements as court judgments without the obligor's explicit consent and judicial review represents a violation of obligors' rights and undermines the integrity of the legal process. Without proper consent and oversight, obligors are subjected to involuntary obligations that do not accurately reflect their financial circumstances or adhere to legal standards of fairness and due process.

188.   Enforcing such agreements without proper consent and review infringes upon the rights of the obligors.

## Count Eighteen: Financial Accountability

189.   Plaintiff incorporates each of the above factual allegations as if fully restated here.

190.   There have been reports of discrepancies in the financial reporting of the Title IV-D program in Florida.

191.   Specifically, in the 2018 fiscal year, approximately $1 billion was unaccounted for, raising concerns about the program's transparency and financial accountability.

192.   Plaintiff contends that proper financial management and reporting are indispensable elements for the effective functioning of government programs, particularly those tasked with administering vital services such as child support enforcement. Transparency and accountability in financial practices not only ensure the responsible use of taxpayer dollars but also foster public trust and confidence in the integrity of governmental institutions.

193.   Plaintiff seeks to address these concerns by advocating for heightened scrutiny and oversight of the Title IV-D program's financial practices.

## Count Nineteen: Violation of Sovereign State Citizen Rights

194.   Plaintiff incorporates each of the above factual allegations as if fully restated here.

195.   Sovereign state citizens maintain rights that are independent and not subject to legal process without their explicit consent.

196.   Federal jurisdiction does not automatically apply to sovereign state citizens unless explicitly consented to by the individual.

197.   Unauthorized actions taken by state child support agencies against sovereign state citizens, without their explicit consent, constitute a violation of their rights.

198.   Defendant Florida Department of Revenue's actions in enforcing child support obligations against sovereign state citizens without their explicit consent are unlawful and invalid.

199.   As a direct consequence of Defendant's actions, Plaintiff has suffered infringements upon their rights as a sovereign state citizen.

200.   Plaintiff seeks redress for the violations of their rights and requests that the court declare the unauthorized actions of state child support agencies against sovereign state citizens as null and void.

## Count Twenty: Unconstitutionality of Child Support Enforcement

201.   Plaintiff hereby incorporates each of the above factual assertions as if fully set forth herein.

202.   The enforcement of child support by Defendant Florida Department of Revenue, as currently practiced, constitutes a violation of the Florida Constitution, specifically in the context of the separation of powers doctrine outlined in Article II, Section 3.

203.   The separation of powers doctrine mandates that each branch of government—executive, legislative, and judicial—has distinct and separate functions and one branch may not exercise the powers of another branch except as expressly provided in the constitution.

204.   Child support enforcement, as conducted by the executive branch of the United States through contracts with state and county executive branches, circumvents the authority of the judicial branch, thereby infringing upon the principles of separation of powers enshrined in the Florida Constitution.

205.   The individuals presiding over child support enforcement proceedings, often referred to as administrative law judges or child support enforcement agents, do not hold positions within the judicial branch and lack the authority of judicial officers. Thus, they operate outside the purview of the judicial system.

206.   The adjudication of child support matters by administrative law judges or child support enforcement agents violates the exclusive jurisdiction of the judicial branch to hear and decide civil and criminal matters.

207.   By allowing administrative law judges or child support enforcement agents to practice law and make determinations that are comparable to those of district court judges, the current child support enforcement process confers powers upon non-judicial officers that exceed those delineated by the Florida Constitution.

208.   The administrative process employed in child support enforcement infringes upon the original jurisdiction of district courts, as established by the Florida Constitution, thereby encroaching upon the rightful authority of the judicial branch.

209.   Furthermore, the jurisdiction of administrative law judges or child support enforcement agents is not subordinate to that of district courts, contravening the constitutional principle that administrative bodies should operate within inferior jurisdiction to the courts.

210.   The current child support enforcement structure empowers individuals who are not attorneys to engage in the practice of law, a function reserved exclusively for the judicial branch under the Florida Constitution.

211.   As a result of these constitutional violations, the administrative process utilized in child support enforcement undermines the separation of powers doctrine and infringes upon the fundamental principles of governance established by the Florida Constitution.

212.   The unconstitutional nature of child support enforcement by Defendant Florida Department of Revenue, as determined by the Minnesota Supreme Court (Holmberg v. Holmberg) and echoed in the principles of the Florida Constitution, renders the current system incompatible with the legal framework intended to safeguard the rights and liberties of Florida residents.

213.   Plaintiff contends that the unconstitutional enforcement of child support not only violates the separation of powers doctrine but also undermines the integrity of the judicial system and denies individuals their due process rights under the law.

214.   Plaintiff seeks a declaration from this honorable court affirming the unconstitutionality of the current child support enforcement process and demanding corrective action to ensure compliance with the principles of separation of powers outlined in the Florida Constitution.

215.   Through this action, Plaintiff aims to restore the integrity of the judicial system, safeguard individual liberties, and uphold the foundational principles of governance established by the Florida Constitution.

## LEGAL BASIS

216. **Blessing v. Freestone (520 U.S. 329):** The 9th Circuit Court of Appeals ruled that Title IV-D programs do not benefit children or custodial parents directly, negating federal rights to the program. The Supreme Court ruled that individuals do not have enforceable rights under Title IV-D of the Social Security Act to compel state compliance with federal child support enforcement standards through 42 U.S.C. § 1983. This case limits the ability of individuals to use federal courts to enforce state compliance with federal child support regulations.

217. **Kavadas v. Department of Motor Vehicles (Docket No. MER-L-1044-15):** In this 2019 New Jersey case, the court ruled that the automatic suspension of driver's licenses due to nonpayment of child support violates due process and fundamental fairness.

218. **Monell v. Department of Social Services of the City of New York (436 U.S. 658):** This case established that local governments can be sued under 42 U.S.C. § 1983 for civil rights violations resulting from their official policies or customs. It clarified the scope of liability for governmental entities in civil rights cases.

219. **Holmberg v. Holmberg (578 N.W.2d 817):** In this case, it was established that administrative agencies lack the subject matter jurisdiction to decide constitutional issues, which are within the exclusive province of the judicial branch. This ensures that constitutional matters receive appropriate judicial consideration.

220. **Ex parte Young (209 U.S. 123):** This case established that state officials can be sued in their official capacity for prospective relief to end ongoing violations of federal law. It allows individuals to seek injunctions against state officials to prevent the enforcement of unconstitutional state actions.

221. **Neland v. Clearwater Memorial Hospital (257 N.W.2d 366):** This case reaffirms that administrative agencies are precluded from deciding constitutional issues. Constitutional questions must be addressed in judicial courts, ensuring proper legal procedures and protections are followed.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jacob Barry Allston respectfully requests the following relief:

222.  **Default Judgment:** Enter a default judgment against Defendant, Florida Department of Revenue, for failing to provide a legal basis for their actions.

223.  **Damages:** Award damages totaling $3,261,500.00 for emotional distress, mental anguish, defamation, mail threats, unauthorized communication, legal research, miscellaneous expenses and seized funds reimbursement.

224.  **Declaratory Relief:** Declare that the actions taken by the Florida Department of Revenue and related agencies were unauthorized and void.

225.  **Injunctive Relief:** Permanently enjoin the Florida Department of Revenue from further unauthorized actions against Plaintiff.

226.  **Other Relief:** Grant any other relief the Court deems just and proper.

## REQUEST FOR DAMAGES: RATIONALE FOR AWARDING $3,261,500.00

The plaintiff respectfully requests the Court to award damages totaling $3,261,500.00. This amount is sought to compensate for the significant harm and

losses experienced as a direct result of the unlawful actions and negligence of the

Florida Department of Revenue (DOR) and associated state agencies. The

breakdown of damages is as follows:

227.  **Emotional Distress - $2,800,000.00**

**Legal Basis**: 32 CFR § 536.77(a)(3)(vii)

**Explanation**: The unlawful imposition and enforcement of child support have

caused severe emotional distress. This includes anxiety, depression, and other

psychological impacts that have significantly affected the plaintiff's daily life and

well-being. (Rel. Per Count – One, Two, Five, Six, Seven, Eight, Nine, Ten,

Eleven, Twelve, Thirteen, Fourteen, Fifteen, and Sixteen)

228.  **Mental Anguish - $200,000.00**

**Legal Basis**: 42 CFR § 488.301

**Explanation**: The continuous threats and coercive tactics used by the DOR,

including threats of license suspension and potential incarceration, have inflicted

prolonged mental anguish. This persistent stress has hindered the Plaintiff's ability

to function normally and has had a detrimental impact on mental health.

229.  **Defamation of Character - $200,000.00**

**Explanation**: The unlawful and inaccurate reporting of child support obligations has defamed the Plaintiff's character. The dissemination of false information to credit bureaus and other entities has caused reputational harm and financial hardship.

230. **Mail Threats - $5,000.00**

**Legal Basis**: 18 U.S.C. § 876

**Explanation**: The Plaintiff received numerous threatening letters from the DOR, which constitutes mail threats. These letters exacerbated the emotional distress and mental anguish already being experienced.

231. **Unauthorized Communication - $25,000.00**

**Explanation**: There have been unauthorized communications regarding the Plaintiff's personal information and child support obligations. These unauthorized disclosures have violated the Plaintiff's privacy rights.

232. **Legal (Sundry) Research and Response Costs - $30,000.00**

**Explanation**: The Plaintiff has incurred significant costs in conducting legal research and responding to the actions of the DOR. This includes preparing and

filing necessary legal documents and obtaining professional legal advice to navigate the complex legal landscape.

233.  **Miscellaneous Expenses (Notary, Postage, Gas, Mileage) - $500.00**

**Explanation**: The Plaintiff has incurred various out-of-pocket expenses related to notary services, postage for mailing legal documents, gas, and mileage for attending court visits and other related activities.

234.  **Seized Funds Reimbursement - $1,000.00**

**Explanation**: The Plaintiff seeks reimbursement for the approximately $1,000.00 seized from their bank account by the DOR without proper legal authorization or due process, violating the plaintiff's Fourth Amendment rights.

**Total Damages: $3,261,500.00**

The plaintiff asserts that the total damages of $3,261,500.00 are justified based on the profound and multifaceted harm experienced. The unlawful actions and negligence of the DOR have caused substantial emotional, psychological, and financial harm. The award of these damages is necessary to compensate for these losses and to hold the responsible parties accountable for their actions.

I affirm, under the penalties for perjury, that the foregoing representations are true.

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Respectfully submitted,

Sincerely and without ill will, vexation, or frivolity,

Without Recourse, Without Prejudice, i.e.,

 all Natural, Unalienable Rights Reserved

By: /s/ Jacob Barry: Allston

750 N Atlantic Ave. #605

Cocoa Beach, FL Republic [zip code exempt]

a Titled Secured Party, creditor,

owner, principal, surety, the man.

Date: 6/10/24